UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

In re:

   Norman E. Kasubowski,                          Case No. 09-20128-dob
                                                               Chapter 13 Proceeding
                     Debtor.                             Hon. Daniel S. Opperman
_____/

## Opinion

The matters before the Court center around a motion for contempt filed by the Debtor to remedy an alleged violation of the automatic stay. On December 18, 2009, the Court granted the Debtor's motion and entered an order of contempt against certain creditors. On February 4, 2010, attorney Gregory Rotter filed a motion for reconsideration. Also at issue is the amount of damages requested by counsel for the Debtor and the response to the damages claim filed by Mr. Rotter. The Court has jurisdiction to resolve the issues before it under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). For the reasons explained in this opinion, the Court denies Mr. Rotter's motion for reconsideration subject to a modification of the contempt order based on a ground not raised in the motion.

## Facts

Prior to the filing of the Debtor's bankruptcy petition, a judgment was entered against the Debtor by the 53rd Circuit Court for Cheboygan County, Michigan. Pursuant to this judgment, the Debtor owes $95,197.95 to Karl Stone, Marilyn Wollenweber, and David Stone.

On January 20, 2009, the Debtor filed a Chapter 13 petition with this Court. The

1

automatic stay pursuant to 11 U.S.C. § 362 was imposed on that day. Ten days later, on January 30, 2009, a writ of garnishment was issued by the 53rd Circuit Court indicating the plaintiff and judgment creditor as "Karl J. Stone, et al" and plaintiffs' attorney as being Mr. Gregory C. Rotter. This writ of garnishment was subsequently delivered to Fifth Third Bank as garnishee, and Fifth Third Bank duly and properly responded to the writ of garnishment. As part of its response, Fifth Third Bank removed $2,438.61 (the "Seized Funds") and delivered them to Mr. Rotter on or about February 5, 2009. In his Schedule C, the Debtor exempted $4,000.00 as the balance in the Fifth Third Bank account.

On February 10, 2009, counsel for the Debtor sent a fax to Mr. Rotter requesting the return of the Seized Funds because of the Debtor's pending Chapter 13 bankruptcy case. Throughout the spring and summer of 2009, Debtor's counsel sent two letters to Mr. Rotter reminding him of the Debtor's bankruptcy case and requesting that he return the Seized Funds to him or the Debtor. His efforts were unsuccessful.

On November 19, 2009, Debtor's counsel filed a Motion for Contempt. A certificate of non-response was filed by the Debtor on December 15, 2009. The Court entered an order holding Karl Stone, Marilyn Wollenweber, David Stone, and Mr. Rotter in contempt ("Contempt Order") on December 18, 2009. A provision in the Contempt Order scheduled a hearing to take place on January 7, 2010 to address the issue of damages.

The Chapter 13 Trustee, counsel for the Debtor, and Mr. Rotter appeared at the hearing on January 7, 2010. Mr. Rotter represented to the Court that he was appearing before it "as a

respondent" and that he "was not representing a party."[1]  Mr. Rotter also informed the Court that he had not taken any action on the Contempt Order because he was away on Christmas Break and did not return to his office until December 28, 2009.  Mr. Rotter then asked the Court reconsider the issuance of the Contempt Order.  The Court heard the parties' arguments on the circumstances leading to the entry of the Contempt Order and the damages allegedly suffered by the Debtor.  The Court informed Mr. Rotter that he had to file and serve the proper motion to enable the Court to address his request.  The Court also directed Debtor's counsel to file a statement detailing damages while providing Mr. Rotter with the opportunity to file a response to the statement for damages on or before February 5, 2010.  The hearing was continued to March 4, 2010.

On January 22, 2010, counsel for the Debtor filed a detailed declaration regarding alleged damages, including attorney fees, sustained by the Debtor.  Mr. Rotter filed a response to the declaration, a motion for reconsideration, and a brief in support on February 5, 2010.

Counsel for the Debtor and the Chapter 13 Trustee appeared at the hearing on March 4, 2010.  Mr. Rotter did not appear at the hearing or contact the Court to explain his absence.  The Debtor's counsel represented to the Court that all issues relative to the automatic stay violation were raised and properly before it for determination.  At the conclusion of this hearing, the Court

---

[1] The Court is troubled by an issue brought to its attention by Mr. Rotter.  It appears that neither Ms. Wollenweber or Mr. David Stone received service of the Debtor's motion for contempt.  It is undisputed that Mr. Rotter represents Mr. Karl Stone.  The record before the Court is unclear as to whether Mr. Rotter was also the attorney of record in the state court civil action for Ms. Wollenweber or Mr. David Stone.  The record also fails to indicate whether Ms. Wollenweber or Mr. David Stone were served with the Contempt Order.  Although the Court points out these discrepancies, it is unnecessary to resolve them at this time.  The determinations made in this Opinion only apply to Mr. Rotter.

3

took the matter under advisement.

## Discussion

The motion before the Court states that it is a "motion for reconsideration." But it is not clear if Mr. Rotter is relying on Fed. R. Bank. P. 9023 or 9024. The Court will construe the motion as being brought under Rule 9023, which incorporates Fed. R. Civ. P. 59, because Mr. Rotter moved for such relief at the hearing on January 7, 2010.

Rule 59(e) provides that a party may move "to alter or amend a judgment . . . no later than 28 days after entry of the judgment." "Motions to alter or amend a judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). "A motion pursuant to Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *In re J & M Salupo Development Co.*, 388 B.R. 795, 800-801 (B.A.P. 6th Cir. 2008) (other citations omitted). "The burden of demonstrating the existence of a manifest error of fact or law rests with the party seeking reconsideration." *Id*. (quoting *In re Nosker*, 267 B.R. 555, 564 (Bankr. S.D. Ohio 2001).

Mr. Rotter argues that reconsideration of the Contempt Order is required because he did not receive service of the motion and brief in support of the Debtor's contempt motion and that by the time he received service of the Contempt Order he was unable to properly address the situation due to the Christmas holiday. Mr. Rotter contends that he had a valid defense to the Debtor's motion for contempt because he did not receive "timely notice" of the Debtor's bankruptcy case.

4

In support of his reconsideration motion, Mr. Rotter relies on the Affidavit of Kelly Fuller. In her affidavit, Ms. Fuller states that she is "exclusive[ly] in charge of all U.S. Mail communications sent to" Mr. Rotter at his post office box with the exception of mail that requires his personal signature. In addition, Ms. Fuller states that no notice of the Debtor's bankruptcy case or the automatic stay was received by Mr. Fuller prior to the writ of garnishment being requested, entered, and then served on Fifth Third Bank. Ms. Fuller further states that Mr. Rotter was not informed of the Debtor's Chapter 13 bankruptcy case until February 10, 2009, when he received a fax from Debtor's counsel. Ms. Fuller also states that while Mr. Rotter did receive two copies of a notice and opportunity for hearing in November, 2009 from counsel for the Debtor, neither the motion or the brief was included.

After considering all of these facts, the Court concludes that Mr. Rotter is unable to fulfill his burden under Rule 59(e). No clear error of law or fact, newly discovered evidence, or change in controlling law, or a manifest injustice can be found in this matter. Mr. Rotter did not allege and is unable to allege that any such grounds exist for relief under Fed. R. Civ. P. 59(e).

In reaching this conclusion, it will be helpful to review the nature of the underlying action – that is whether the automatic stay was violated pursuant to 11 U.S.C. § 362(a), which automatically stays all proceedings against the debtor as follows:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, . . . operates as a stay, applicable to all entities, of –
>
>> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of this case under this title;

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. . . .

Thus, a bankruptcy petition operates as a stay of "any proceeding to recover a claim against the debtor" and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The purpose of the automatic stay is to give the debtor "a breathing spell from his creditors." *In re Banks*, 253 B.R. 25, 29 (Bankr. E.D. Mich. 2000). The legislative history indicates that the stay provides a debtor broad protection from his creditors by stopping all collection efforts, all harassment, and all foreclosure actions. *Id.* (citation omitted). The automatic stay requires creditors to take affirmative steps to halt or reverse any pending suits or collection efforts begun prior to bankruptcy, including garnishment, repossession of a vehicle, and foreclosure of a mortgage or lien. *Banks*, 253 B.R. at 30.

A party violates the automatic stay "by taking any action prohibited by § 362(a) after receiv[ing] notice of the bankruptcy filing." *Id.* "[K]nowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997) (quoting *In re Wagner*, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987)). To show liability under § 362(k), the debtor need only show actual notice of the bankruptcy and an act in violation of the stay. "Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages." *Daniels*, 206 B.R. at 445. Thus, the Court must question whether there was a violation of the automatic stay, however done and with whatever motive, whether willful or not.

After a careful review of the Motion for Reconsideration, the Brief in Support of the

Motion for Reconsideration, and Ms. Fuller's Affidavit, the Court rejects Mr. Rotter's allegation that he failed to receive the Debtor's motion for contempt. The notice and opportunity for hearing that Mr. Rotter relies on indicates in bold lettering that the hearing would address a "motion for contempt for violation of the automatic stay." The certificate of service, a copy of which is attached to Ms. Fuller's affidavit, contains this same statement. It is readily apparent to the Court that Mr. Rotter received notice early to mid-November 2009 that the Debtor sought to obtain relief from this Court to address his failure to return the Seized Funds despite repeated requests from the Debtor. No explanation is given as to why Mr. Rotter did not contact counsel for the Debtor to either obtain a copy of the motion for contempt or to reach a resolution on this matter.

In addition, Mr. Rotter fails to provide any plausible explanation as to why he continued to hold on to the Seized Funds after he received them and was fully aware of the Debtor's bankruptcy case. In this case, it is clear that Mr. Rotter was aware that the Debtor filed Chapter 13 by way of the fax he received from Debtor's counsel on February 10, 2010. He admitted at the hearing on January 7, 2010, that he received this fax from the Debtor's attorney. The Court cannot discern any reason why Mr. Rotter did not either turn over the money to the Chapter 13 Trustee or request interpleader of the funds after that date. The continued retention of these funds is a clear violation of 11 U.S.C. § 362(a)(2) and (3). The Court does note that during the January 7, 2010, hearing, Mr. Rotter professed confusion as to whether the money should be sent to either Mr. McDonald, as the Chapter 13 Trustee, or to the Debtor because the proceeds were exempt. A review of the docket in this case discloses that Mr. Rotter took no action to resolve this uncertainty either by tendering the money to Mr. McDonald, as the Chapter 13 Trustee, or

7

by filing a request to interplead the Seized Funds and have the Court determine the ownership of the funds.

While the Court appreciates Mr. Rotter's reluctance to turn the funds over to the Debtor, that reluctance should not extend to the Chapter 13 Trustee, who is charged with the duty to ensure that creditors of the Debtor are paid or, for that matter, this Court, which is in a position to determine any factual or legal issues regarding property of the estate such as the Seized Funds in question. Parties are encouraged "to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protect[] debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations." *Id*. (other citations omitted).

Mr. Rotter also contends that his "good faith retention of an asset" was not a willful failure to comply with the automatic stay. The Court disagrees. "'Whether a party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful.' . . . 'Not even a "good faith" mistake of law or a "legitimate dispute" as to legal rights relieve a willful violator of the consequences of the act,' or even good faith reliance on an attorney's advice." *In re Daniels*, 206 B.R. at 446 (other citations omitted). The deliberate retention of the Seized Funds for approximately ten months is unacceptable and a willful violation of the automatic stay. Fortunately, Mr. Rotter corrected this situation because, as was developed at the January 7, 2010, hearing, the Trustee received a check from Mr. Rotter for the full amount of the Seized Funds.

The Court, however, believes the Contempt Order should be modified on grounds not raised by Mr. Rotter. The Debtor filed a motion for contempt. This Court granted the Debtor's

8

motion and found Mr. Rotter along with three other individuals in contempt.  This finding is inconsistent with the plain language of § 362(k) and must be corrected.

> '[E]stablishing civil contempt is not necessary.  Imposing sanctions for contempt was the principal answer to willful violations of the stay before section 362[k] was enacted.  It remains an alternative or additional remember in some circumstances, but section 362[k] is entirely independent and triggered solely by its own terms.'

*In re Daniels*, 206 B.R. 444, 446 (Bankr. E.D. Mich. 1997) (quoting 1 David G. Epstein, et al., *Bankruptcy*, § 3-33, at 364 (1992) (footnotes omitted)).  Because the Contempt Order contains an unnecessary finding, the Court will modify it based on its inherent power and statutory authority under 11 U.S.C. § 105(a).  The Court will amend the Contempt Order to vacate the finding of contempt as to Mr. Rotter and indicate in an amended order that the Debtor's motion is granted under § 362(k).

Turning to the issue of damages, a debtor may request damages if he suffers an injury due to a violation of the automatic stay.  Under § 362(k), subject to certain limited exceptions, which are not at issue in this case,

> an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages[.]

"The key to an award of damages under section 362[k] is not the willful violation of the automatic stay, but the resulting injury.  Any person who suffers injury as the result of a willful violation of the automatic stay is entitled to recover actual damages." *In re Perrin*, 361 B.R. 853, 856 (B.A.P. 6th Cir. 2007).

If a party moves for actual damages, including costs and attorney fees, the burden rests with the movant to offer evidence to support the damages sought.  *Archer v. Macomb County*

*Bank*, 853 F.2d 497, 499 (6th Cir. 1988) (holding that damages awarded for violations of the automatic stay must be supported by evidence rather than speculation and conjecture). Attorney fees would require testimony or a verified affidavit and bill or costs, and actual damages could include amounts paid as a result of the stay violation, incidental costs (lost time from work, travel costs, daycare expenses, etc.). "Proof of damages requires that degree of certainty that the nature of the case admits." *In re Perrin*, 361 B.R. at 856 (citing *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir. 1988)).

Punitive damages are also statutorily permitted under § 362(k) "in appropriate circumstances." While the Bankruptcy Code provides definitions for certain statutory terms and phrases, it does not offer a definition for the phrase "appropriate circumstances." Courts generally consider an award of punitive damages in the limited context of when a creditor engages in egregious behavior. *Archer v. Macomb County Bank*, 853 F.2d at 500 (recognizing that bankruptcy courts may impose appropriate punitive damages to deter "deliberate . . . and repeated violations of the automatic stay"). Punitive damages are awarded to punish a creditor to the extent necessary "to cause a change in the creditor's behavior." *In re Pawlowicz*, 337 B.R. 640, 645 (Bankr. N.D. Ohio 2005)(citing *In re Riddick*, 231 B.R. 265, 269 (Bankr. N.D. Ohio 1999)). A determination as to punitive damages will depend on the evidence presented by a debtor; bare allegations in the pleadings alone are insufficient.

In this case, the Debtor seeks damages for attorney fees he incurred of $2,600.00 and costs of $438.00 in overdraft charges assessed by Fifth Third Bank. The Court had the opportunity to review the declaration filed by Debtor's counsel detailing the time spent by him to address the violation of the automatic stay. The Court has also reviewed the response to the

claim for sanctions filed by Mr. Rotter. Initially, the Court notes that Mr. Rotter's contention that the Debtor's request for sanctions is controlled by Local Rule 9011-3 is misplaced. Rule 9011-3 applies when a party fails to comply with "any applicable rules." It does not apply in this situation when damages are requested due to violations of the automatic stay. As the Court previously explained in its analysis, § 362(k)(1) controls an award of damages.

The Court, however, does conclude that certain limited reductions to the time spent by Debtor's attorney to handle the automatic stay violation are required. The entry dated February 10, 2009, needs to be reduced by .8 hour. While Debtor's counsel performed some meaningful legal services regarding the letter to Mr. Rotter, the majority of those services pertained to his investigation of the pre-petition state court civil case at the Cheboygan County Court. The Court will reduce the February 10, 2009, entry to .2 hours because the Court concludes that this is the appropriate amount of time to spend in regard to the violation of the automatic stay.

The Court will also adjust the entry dated June 25, 2009, which indicates Debtor's counsel spent 2.8 hours on Westlaw research. The Court will allow 1 hour for this research and deducts 1.8 hours. While counsel should be compensated for a general review and update of well known existing law, an attorney of Mr. Silver's experience should not need more than 1 hour to accomplish this end. Moreover, as will be further explained, the hourly rate charged by Mr. Silver assumes that the attorney in question has the requisite skill and knowledge to avoid continued research on fundamental issues. Accordingly, the Court reduces the amount of hours allowed in this case from 10.4 hours to 7.8 hours after deduction for the 2.6 hours detailed in this Opinion.

With regard to Mr. Silver's hourly rate, the Court notes that it reviews fee applications

and has routinely approved an hourly rate of $250 per hour; not only in a Chapter 13 setting, but also in regard to counsel who has decades of experience in Chapter 13 cases such as Mr. Silver. While the Court has seen hourly rates lower than $250 per hour, the vast majority of those attorneys do not have the experience or knowledge possessed by Mr. Silver. Moreover, the Court has, from time-to-time, approved an hourly rate above $250 per hour, so the hourly rate requested in this case is certainly commensurate with the degree of knowledge and skill of the attorney involved.

Finally, the Court, at this time, is unable to award the overdraft charges of $438 as detailed in Mr. Silver's declaration. There is presently no evidence before the Court to justify these charges, but that evidence may be available. Accordingly, the Court will hold in abeyance the award of overdraft charges in the amount of $438 until Debtor, through counsel, submits evidence that those charges were indeed incurred. The Court notes that Debtor should be able to obtain support for the overdraft charges within 21 days. If the Debtor has any difficulty obtaining this information, Debtor's counsel may file an ex parte motion seeking extension of time to file the necessary documents with this Court.

## Conclusion

The Court concludes that the Motion for Reconsideration is DENIED. The Court, however, will vacate the finding of contempt against Mr. Rotter made in the Contempt Order because such a finding is unnecessary under § 362(k). Instead, the Court finds that Mr. Rotter violated the automatic stay pursuant to 11 U.S.C. § 362(k) through his continued and deliberate retention of the Seized Funds. The Court determines that the damages arising from the violation

of the automatic stay include attorney fees in the amount of $1,950 (7.8 hours x $250) and that the assessment of overdraft charges in the amount of $438 is held in abeyance until the Debtor can submit evidence supporting those charges. Such evidence shall be submitted within 21 days of today's date.

      Counsel for the Debtor is directed to prepare an order consistent with this Opinion.

cc:    Gretchin Diffin
       Walter Elowski
       Gregory Rotter

**Signed on April 15, 2010**

                                          **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**